```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                         DISTRICT OF VERMONT
                                      :
UNITED STATES OF AMERICA              :
                                      :
          v.                          :
                                      :    No. 2:07-cr-119
THOMAS EARL DOUGLAS,                  :
      Defendant.                      :
                                      :
```

## OPINION AND ORDER

On October 11, 2007, Defendant Thomas Douglas was indicted in the District of Vermont with one count of violating 18 U.S.C. § 2422(b) and one count of violating 18 U.S.C. § 2252A(a)(1). At a detention hearing on November 8, 2007, this Court granted the Government's motion to revoke the release order originally issued by Magistrate Judge Niedermeier. Douglas moves to recuse the Court from further involvement in the case based on allegations of bias stemming from this detention hearing. Douglas also moves to dismiss the indictment for violation of his Sixth Amendment right to a speedy trial. For the reasons set forth below, Douglas's Motion to Recuse the District Court Judge for Actual Prejudice and the Appearance of Partiality (Doc. 27) and Motion to Dismiss for Violation of Defendant's Right to a Speedy Trial (Doc. 26) are DENIED.

## I.  Background

In May 2007, Douglas allegedly engaged in online communication with an undercover police officer located in Vermont.  The officer was posing as a single mother with a 13 year old daughter.  Douglas allegedly requested that the mother and daughter travel to Alabama so that Douglas could have sex with the daughter.  The Government charges that Douglas transferred a file to the undercover police officer during one of the online chats which contained an image of a child being sexually abused.

On August 3, 2007, a criminal complaint was filed against Douglas in the Middle District of Alabama.  On August 4, 2007, FBI agents arrested Douglas in Texas.  On August 6, 2007, Douglas made his initial appearance in the United States District Court for the Southern District of Texas and the court issued a temporary detention order.  On August 10, 2007, a detention hearing was held; Douglas was ordered detained and committed to the Middle District of Alabama.  On August 15, 2007, a grand jury in the Middle District of Alabama returned a two-count indictment for violations of 18 U.S.C. § 2422(a), and 18 U.S.C. § 2552A(a)(1).  On September 21, 2007, Douglas filed a motion to dismiss for lack of venue.  On October 2, 2007, the Government conceded lack of venue.  On the same day, in the District of

Vermont, the Government filed a criminal complaint against Douglas.  On October 4, 2007, the United States District Court for the Middle District of Alabama dismissed the indictment for lack of venue.  On October 9, 2007, a Magistrate Judge in the Middle District of Alabama ordered Douglas detained.

On October 11, 2007, a federal grand jury in the District of Vermont indicted Douglas on one count of knowingly using a facility of interstate and foreign commerce to attempt to persuade, induce, entice, or coerce an individual under the age of 18 years to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) and one count of knowingly transporting an image of child pornography in interstate and foreign commerce, in violation of 18 U.S.C. § 2252A(a)(1).  On November 1, 2007, Douglas made his initial appearance in the United States District Court for the District of Vermont.  On November 2, 2007, Douglas was arraigned before Magistrate Judge Niedermeier.  At a detention hearing on November 5, 2007, Magistrate Judge Niedermeier ordered Douglas released on personal recognizance, but stayed the release order so that the Government could appeal the order.

On November 8, 2007, the Court heard arguments on the Government's motion to revoke the release order.  In support of Douglas's argument that his wife's residence, 4309 Brookside

Drive, Forest Park, Georgia, was an appropriate place for Douglas to reside while on pretrial release, Douglas's counsel maintained that Douglas's wife had recently informed counsel that (1) the residence was a single-home residence; (2) it was less than 10 miles from the federal courthouse and probation office; (3) it was not near any schools; and (4) there was no computer access in the home.  When the Court asked Douglas's counsel if he knew whether Douglas's wife owned the property, Douglas's counsel answered that he did not.

In response, the Court expressed concern that 4309 Brookside Drive would be an appropriate place for Douglas to reside while on pretrial release.  The Court's meeting with the Pretrial Services Officer prior to the detention hearing revealed confusion as to who actually owned the residence at 4309 Brookside Drive.  Previously, Douglas's wife had told the officer that she owned the property; however, in Douglas's request for an attorney in August 2007, Douglas had maintained that he rented the residence at 4309 Brookside Drive.  In an effort to determine the ownership status of the residence, staff within the Court's chambers conducted internet searches on Google and LexisNexis.  The first link provided when "4309 Brookside Drive, Forest Park, Georgia" was entered into the Google search field was the Georgia Bureau of Investigation Sex Offender Registry.  The registry

listed Philip Franklin O'Dell, convicted of aggravated child molestation, as a resident of 4309 Brookside Drive. The LexisNexis search returned public records revealing that Douglas's wife did not own the residence at 4309 Brookside Drive.

The Court advised Douglas's counsel that contrary to what Douglas's wife had represented to the probation officer, Douglas's wife did not own the residence at 4309 Brookside Drive. Additionally, the Court informed the parties that a registered sex offender resides in the residence. The Court informed the parties that the Court, not the Pretrial Services Officer, had discovered the information concerning the ownership and residents of 4309 Brookside Drive.

The Court revoked the release order and ordered Douglas's detention pending trial. The Court expressed three reasons for ordering Douglas detention pending trial:

> Number one, he does not have a stable residence . . . .
>
> Second, he is proposing a placement which is totally unsuitable for a person charged with this kind of offense, which has never been checked out by probation in advance.
>
> And third, this is an incredibly serious offense. He is facing a 10-year mandatory minimum sentence. That would necessarily, at age 61, place him well into his older years if in fact he is convicted . . . . [T]he relationship with his current wife seems to be relatively short-lived, and I can't see

>       him as having a stable environment . . . .
>       There's no connection to him to that
>       particular residence.  This creates a
>       significant problem in assessing his ability
>       to maintain conditions of release, and as a
>       result the Court will accept the presumption,
>       find that he poses a danger of flight by
>       preponderance, but also a danger to the
>       community, by clear and convincing evidence,
>       and . . . at this particular point, there are
>       no conditions or combination of conditions
>       which could assure the Court that he would
>       not pose a risk of flight or danger to the
>       community.

(Tr. 16-17.)  Additionally, the Court stated that "if there's other verifiable suggestions as to where he can go, I will be glad to hear that."  (Tr. 18.)

## II.  Discussion

### A.  *Motion for Recusal*

*1.  Legal Standards*

*a.  The Standard for Recusal Under 28 U.S.C. § 144*

Title 28 U.S.C. § 144 provides that a federal judge must recuse himself "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party."  Once a motion and affidavit under § 144 are filed, the district judge has the authority and duty to examine the affidavit to determine if it is timely and legally sufficient. *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir.

1988).  To warrant recusal, the personal bias or prejudice "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  *Liteky*, 510 U.S. at 559 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).  However, "the presence of an extrajudicial source [does not] necessarily establish[] bias."  *Liteky v. United States*, 510 U.S. 540, 554 (1994).  Rather, the Supreme Court has acknowledged that some opinions based on information acquired outside the context of judicial proceedings, such as "the judge's view of the law acquired in scholarly reading," are insufficient to establish bias or prejudice warranting recusal.  *Id*. at 554.

Where no extrajudicial source is involved, recusal is warranted only if "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings . . . display a deep-seated favoritism or antagonism that would make fair judgment impossible."  *Id.* at 555.

b.   *The Standard for Recusal under 28 U.S.C. § 455(a)*

Title 28 U.S.C. § 455(a) provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The test under § 455(a) is "an

objective one, which assumes that a reasonable person knows and understands all the relevant facts." *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1313 (2d Cir.1988), *cert. denied,* 490 U.S. 1102 (1989). If that person would "conclude that a trial judge's impartiality could reasonably be questioned," the judge should recuse himself.  *U.S. v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000) (quoting *Diamondstone v. Macaluso*, 148 F.3d 113, 120-21 (2d Cir. 1998)).  "A judge is as much obliged to recuse himself when it is not called for as he is obliged to when it is."  *In re Drexel Burnham Lambert, Inc.,* 861 F.2d at 1312.

*2.    Legal Arguments*

*a.    Douglas Has Not Proven Actual Prejudice Requiring the Court's Recusal Under 28 U.S.C. § 144.*

Douglas's complaints of bias emanate from the Court's internet search of publicly available information in the course of deciding the Government's motion to revoke the release order. Douglas argues that the Court obtained "extrajudicial information" concerning the ownership and residents of 4309 Brookside Drive demonstrating bias or prejudice.  Douglas further argues that the Court's motivation in obtaining the information was to "discount the credibility of Mrs. Douglas and the defendant."

As a preliminary matter, the information about the ownership and residents of 4309 Brookside Drive did not derive from an

extrajudicial source.  Information learned from public records is generally considered excluded from the "extrajudicial source" doctrine.  *See, e.g.*, *Weimer v. County of Kern*, No. 1:06-cv-00735, 2007 WL 14353, at *7 (E.D. Cal. Jan. 3, 2007) (finding that the district court's reference to attorney's bar membership status cannot "be considered a reference to an extrajudicial source nor an expression of bias or partiality" because that information is a matter of public record); *Cross v. Johnson*, 169 F.Supp.2d 603, 618 (N.D. Tex. 2001) ("[D]efendant needs to establish that the trial judge was influenced by interests apart from the administration of justice and that the alleged bias or prejudice resulted in rulings based on . . . facts that were not a matter of public record.").  Furthermore, as the Government notes, "it was appropriate for [the Court] to review information about the residents and ownership status of 4309 Brook Drive . . . .  There is no meaningful distinction between Judge Sessions requesting this information from the pretrial services officer, requesting it from a member of his chambers staff, or procuring it himself."  (Gov't Opp'n 10.)  It was within the Court's responsibilities to be informed of the suitability of the proposed release placement.  The information necessary to assess the suitability of the pretrial release location was a matter of public record and thus cannot be characterized as extrajudicial.

9

Because the Court's alleged bias does not stem from an extrajudicial source, Douglas must show that the Court's actions display "deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky*, 510 U.S. at 556.  Nothing contained in Douglas's allegations or the detention hearing transcript furnishes any basis for concluding that the Court harbors any bias or prejudice against Douglas.  The Court's statements during the detention hearing reveal that the Court's only motivation in searching public records for information concerning the residents and ownership status of 4309 Brookside Drive was to ensure that the proposed pretrial release placement was appropriate.

The Court clearly stated its reasons for obtaining the information concerning the ownership and residents of 4309 Brookside Drive: "[B]efore you ever release . . . an alleged sex offender with such a serious offense, and some significant questions of risk of flight and danger to the community, to a particular residence, you make sure that's a safe residence." (Tr. 14.)  The Court further stated, "When we are faced with the apparent situation that that residence had never been checked out by a probation officer . . . a small amount of research needed to be conducted."  (Tr. 15.)  Such a motivation does not demonstrate bias or prejudice.  Douglas concedes as much when he states, "The

10

issue is whether [the Court's] actions demonstrate bias or prejudice.  This requires looking into the motivation of [the Court] for taking these actions . . . .  [T]he specific searches here were not to determine the suitability of the location." (Def.'s Mot. to Recuse 8-9.)  Contrary to Douglas's claim that the motivation behind the Court's public records search was not to "determine the suitability of the location," but to somehow expose Douglas and his wife as liars, the Court's statements quoted above clearly establish that the Court's motivation in obtaining the information was to ensure that 4309 Brookside Drive was an appropriate pretrial release placement.  The transcript in no way reveals that the purpose of the internet search was to conduct an investigation into either Douglas's or his wife's credibility.

Additionally, the transcript reveals that, far from demonstrating bias or prejudice against Douglas, the Court displayed a level of fairness beyond that which is required under a *de novo* review of the matter.  At the end of the hearing, the Court stated that if Douglas had "other verifiable suggestions as to where he can go, I will be glad to hear that."  (Tr. 18.)  Under a *de novo* review of the matter, the Court, as Douglas concedes, "could simply have ruled against the defendant." (Def.'s Mot. to Recuse 9.)  The Court was under no obligation to

invite Douglas to present additional pretrial release placements to the Court for consideration.  The statement above confirms the Court's ability to decide Douglas's case fairly.

Assuming *arguendo* that the information obtained by the Court did come from an extrajudicial source, Douglas's allegations are insufficient to establish that the Court was influenced by a bias or prejudice originating in this extrajudicial source.  "Bias or prejudice connotes an unfavorable opinion that is somehow 'wrongful or inappropriate' because it is undeserved, rests on knowledge one ought not to possess, or is excessive."  *Groden v. Random House, Inc.*, 61 F.3d 1045, 1053 (2d Cir. 1995) (quoting *Liteky*, 510 U.S. at 554).  Notably, Douglas does not argue that the Court would have been required to rule in Douglas's favor if the Court had not been in possession of the alleged extrajudicial information.  The transcript reveals that the Court granted the Government's motion to revoke the release order for three primary reasons, the second reason being the only one linked to the alleged extrajudicial source.  Douglas has failed to establish that the Court's exposure to the alleged extrajudicial information "result[ed] in an opinion on the merits on some basis other than what the [Court] learned from [its] participation in the case."  *Liteky*, 510 U.S. at 546 n.1.  Therefore, even if the information obtained from the internet search came from an

12

"extrajudicial source," Douglas's argument that this search demonstrates that the Court is biased or prejudiced still fails.

b.  *The Court's Actions Do Not Create an Appearance of Partiality Requiring Recusal Under 28 U.S.C. § 455(a).*

Next, Douglas contends that even if the Court is not actually prejudiced against Douglas, the Court's actions create an appearance of partiality.  Douglas argues that a reasonable person would doubt the Court's impartiality because "a reasonable person, understanding all of the facts, would still be left wondering why the Judge [obtained the information for himself] instead of leaving it to the pretrial services officer or the prosecution to find and develop."  (Def.'s Mot. to Recuse 11.)  As discussed above, it was not improper for the Court to obtain the information regarding the ownership and residents of 4309 Brookside Drive of its own initiative.  Douglas has failed to show how any reasonable person could conclude that the Court's actions, which were entirely within the scope of its judicial responsibilities, call into question the Court's ability to preside fairly, objectively, and impartially over this case.

**B.  *Motion to Dismiss***

Douglas relies exclusively on a violation of his Sixth Amendment right to a speedy trial in his motion to dismiss the indictment.  Douglas explicitly states that he is not asserting a

13

violation of his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq. (Def.'s Mot. to Dismiss 1.) The fact that Douglas asserts no violation of the Speedy Trial Act does not necessarily preclude the Court from finding a violation of his Sixth Amendment Right to a speedy trial. *See* 18 U.S.C. § 3173 ("No provision of this chapter shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution."). However, it would be "an unusual case in which the time limits of the [Speedy Trial Act] have been met but the [S]ixth [A]mendment right to speedy trial has been violated." *U.S. v. Santiago-Becerril*, 130 F.3d 11, 21 (1st Cir. 1997) (citations and internal quotation marks omitted). As the Government aptly notes, "[D]efendant does not . . . claim error under the Speedy Trial Act, a position which essentially concedes the lack of merit of the substantive Sixth Amendment Claim." (Gov't Opp'n 3.)

*1.   Legal Standard for Sixth Amendment Speedy Trial Claim*

"Four factors determine whether a pre-trial delay violates the Sixth Amendment: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the extent of prejudice to the defendant." *U.S. v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530-32 (1971)). First, the Court

must determine whether the delay is presumptively prejudicial. "Unless the delay [is presumptively prejudicial], examination of the other *Barker* factors is unnecessary." *U.S. v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992). The Supreme Court did not identify a specific threshold for finding that a delay is presumptively prejudicial. Rather, the length of the delay sufficient to be presumptively prejudicial depends on the nature of the crime. *Barker*, 407 U.S. at 530 ("The delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). However, in general, post-accusation delay is considered presumptively prejudicial when it approaches one year. *Dodgett v. United States*, 505 U.S. 647, 652 n.1 (1992).

2.  *The Delay Did Not Violate Douglas's Sixth Amendment Right to a Speedy Trial*

The parties dispute from what point Douglas's Sixth Amendment speedy trial clock began to run; Douglas contends that the speedy trial clock runs from his arrest in Texas on August 4, 2007, while the Government argues that the clock runs from Douglas' initial appearance on Vermont charges on October 4, 2007. It is unnecessary for the Court to resolve at what point Douglas' speedy trial right attached, because the length of the delay under either party's calculation is not presumptively

prejudicial.  Douglas admits that a delay of three months is attributable to defense trial preparation, which leaves a delay of one to three months arguably attributable to the Government.

A one to three month delay is insufficient to be considered presumptively prejudicial in this case.  Despite Douglas's claims that this case is not a particularly complex case necessitating long pretrial delay, it would appear that Douglas's charges are complex enough to justify at least a three month delay, particularly in light of the fact that Douglas needed to be transported from Alabama to Vermont.  Therefore, because the delay is not presumptively prejudicial, Douglas's motion to dismiss fails at this point in the *Barker* analysis.

Even if the length of the delay were presumptively prejudicial, Douglas's motion would still fail because the remaining *Barker* factors do not favor Douglas.

Douglas contends that the second factor, the reason for the delay, weighs against the Government.  Douglas alleges that the Government negligently filed charges in a district which lacked jurisdiction over the offense.  The Government attributes the delay to good faith efforts to indict Douglas in the proper district.  The Government argues that the charges were properly brought in Alabama, and that resolving the charges brought in

Alabama and transporting Douglas between districts resulted in ordinary delays which do not weigh against the Government.

The evidence before the Court does not support Douglas's allegation that the Government negligently filed charges in the Middle District of Alabama.  The information available to the Government at the time it filed the original complaint strongly indicated that Douglas was residing within the Middle District of Alabama.  (Gov't Opp'n Ex. A. at 1.)  The record shows that the Government attempted to determine Douglas's location at the time the offenses were committed.  *Id*. at 2.  The record further reveals that the Government ultimately conceded lack of venue because it could not prove by a preponderance of the evidence that Douglas was in the Middle District of Alabama "when he began, continued, or completed either of the offenses" for which he had been charged.  *Id.* at 3.  Nonetheless, it appears that the Government made a diligent effort to ascertain that the Middle District of Alabama was the appropriate district before filing charges there.  The Court cannot reasonably conclude from the evidence before it that the Government negligently indicted Douglas in Alabama.  Therefore, the Government's reasons for originally filing the charges in Alabama are valid and justify the minimal delay in this case.  *See, e.g., Barker,* 417 U.S. at

17

531 ("[A] valid reason . . . should serve to justify appropriate delay.").

Even if the Government were negligent in filing the charges in Alabama, the Government's negligence alone would not mandate dismissal of Douglas's indictment.  Negligent actions weigh less heavily against the Government than "deliberate delays or delays related to inexcusable inefficiency."  *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980)(quoting *United States v. Companion*, 545 F.2d 308, 312 n.3 (2d Cir. 1976)).  Upon consideration of the remaining *Barker* factors, this factor would not strengthen Douglas's argument enough to tip the balance in his favor.

Although it is undisputed that Douglas has timely asserted his right to a speedy trial, Douglas has failed to demonstrate prejudice sufficient to establish a constitutional violation of his speedy trial rights.  Undoubtedly, Douglas has suffered hardships during his incarceration.  However, the Second Circuit has found no constitutional violation in other cases where the defendants have suffered substantially more prejudice than that alleged by Douglas.  *See Flowers v. Warden*, 853 F.2d 131, 133 (2d Cir. 1988) (gathering cases finding no violation of speedy trial right despite adverse psychological effects, destroyed records, death of key witnesses). Douglas's assertions of pretrial anxiety

18

and the dulled memories of potential witnesses are unsupported and insufficient to demonstrate significant prejudice.  Thus, this final factor weighs against Douglas.

After reviewing all of the *Barker* factors, the Court concludes that Douglas did not suffer a violation of his Sixth Amendment right to a speedy trial.

### III.  Conclusion

For the foregoing reasons, Douglas's Motion to Recuse the District Court Judge for Actual Prejudice and the Appearance of Partiality (Doc. 27) and Motion to Dismiss for Violation of Defendant's Right to a Speedy Trial (Doc. 26) are DENIED.

Dated at Burlington, Vermont this 24th day of April, 2008.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge