UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

        v.                                       Crim. No. 2:07-CR-119

Thomas Earl Douglas

## <u>REPORT AND RECOMMENDATION</u>
(Doc. 108)

Defendant Thomas Earle Douglas has moved the Court to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Douglas was convicted in 2008 of one count of using a facility of interstate commerce to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b), and one count of knowingly transporting an image of child pornography in interstate commerce in violation of 18 U.S.C. § 2252A(a)(1). Chief Judge William K. Sessions III subsequently sentenced Douglas to 121 months in prison, to be followed by a five-year term of supervised release. The conviction was affirmed on direct appeal, and Douglas is currently serving his term of imprisonment.

Douglas now claims that he received ineffective assistance of counsel at each stage of the proceedings. The government opposes the motion. For the reasons set forth below, I recommend that Douglas's motion be DENIED.

**Factual and Procedural Background**

The following facts are derived from the records of this Court, including the trial transcript and presentence report, as well as two opinions of the Second Circuit Court of Appeals affirming Douglas's conviction.   The Court of Appeals described these facts as "largely undisputed."   *United States v. Douglas*, 626 F.3d 161, 162 (2d Cir. 2010).

On May 7, 2007, a detective with the South Burlington, Vermont Police Department entered an online "fetish" chat room.   The detective employed an undercover on-line profile, purporting be the divorced mother ("Liz") of a thirteen-year-old daughter ("Anna") and a three-year-old son.   In the chat room, the detective encountered Douglas.

In his screen name and on-line profile, Douglas professed to be someone who sexually trained female children.   The detective, still posing as Liz, initiated an instant message communication ("chat") with Douglas, who expressed an interest in sexually abusing Liz's daughter.   On May 7 and May 8, 2007, Douglas and the detective continued to engage in a series of chats, in which Douglas attempted to convince Liz to bring Anna to him in Alabama.   He provided his telephone number, sent images of himself, offered to pay traveling expenses, and researched job opportunities for Liz.   He also described how he had abused children in the past, and assured Liz that he would not hurt her daughter. On May 8, 2007, Douglas electronically sent Liz an image of child pornography.

A criminal complaint against Douglas was filed in the Middle District of Alabama, but was later dismissed for lack of venue.   A criminal complaint was subsequently filed in the District of Vermont.   On October 11, 2007, a federal grand jury in Vermont returned a two-count indictment against Douglas, charging him with one count of using a facility of

interstate commerce to attempt to entice a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b), and one count of knowingly transporting child pornography in interstate commerce in violation of 18 U.S.C. § 2252A(a)(1). (Doc. 2.) A superseding indictment, asserting essentially the same charges, was filed on September 25, 2008. (Doc. 46.)

Douglas was initially represented by Assistant Federal Public Defender ("AFPD") Robert Fellrath. On February 14, 2008, AFPD Fellrath filed a motion to dismiss the indictment, claiming a violation of the defendant's Sixth Amendment right to a speedy trial. (Doc. 26.) Fellrath also moved for the recusal of Judge Sessions, asserting actual prejudice and the appearance of partiality. (Doc. 27.)

On April 25, 2008, Judge Sessions issued an Opinion and Order rejecting both motions. (Doc. 30.) AFPD Fellrath subsequently withdrew from the case, and the Court appointed Attorney Thomas Sherrer as defense counsel. Attorney Sherrer was assisted by another attorney from his firm, Attorney Devin McLaughlin.

On September 22, 2008, Attorney Sherrer moved to dismiss the indictment. (Doc. 43.) The motion argued (1) that the language of the § 2422(b) violation alleged in Count One "misplaced" the term "knowingly" such that the term modified the phrase "use of a facility of interstate and foreign commerce" rather than the enticement element of § 2422(b), (2) that a violation of § 2422(b) could not be established because Douglas had communicated with an undercover officer and not a real minor child, and (3) that the indictment was not signed by the grand jury foreperson. As noted above, the grand jury

returned a superseding indictment on September 25, 2008.   On November 17, 2008, the district court denied the motion to dismiss.   (Doc. 60.)

Jury selection took place on November 5, 2008.   Prior to the proceeding, defense counsel moved for an extension of time for *voir dire*, which the district court granted. Both parties were then given an opportunity to briefly describe the case to the prospective jurors.   Judge Sessions also addressed the panel, asking, among other things, whether there was anything about their own "personal experiences [or] background . . . the nature of these charges, or anything else" that would prevent them from being fair.   (Doc. 106 at 67.)   Only one prospective juror raised an issue, and that juror was ultimately not selected to serve.   (*Id.* at 68.)

Defense counsel asked if any of the panelists would be troubled by an entrapment defense.   (*Id.* at 87-88.)   None of the panelists indicated a problem with such a defense. Defense counsel also alerted the panel to a "disturbing" photograph that he expected the government to introduce as evidence.   (*Id.* at 88.)   Five prospective jurors indicated they would have difficulty viewing such a photograph.   One of these, Ms. Webster, stated, "I guess I just don't feel -- I don't feel I can look at that photograph."   (*Id.* at 89.)   Ms. Webster also indicated that she had a potential scheduling conflict because of renovations being done at her home.   (*Id.* at 92.)   A second potential juror, Mr. Allen, stated that "[i]f I had a remote, I would change the channel."   (*Id.* at 89.)   Defense counsel warned Mr. Allen that "[i]f you are not going to be able to look at, we should know that now because you will be faced with it."   (*Id.*)   Mr. Allen responded that he would "force himself" to view the image.   (*Id.*)

Judge Sessions struck seven prospective jurors for cause based on the answers they had provided during *voir dire*. (*Id.* at 93-94). The defense team used seven of their ten peremptory challenges before arriving at a final jury. (*Id.* at 95-97). Both Ms. Webster and Mr. Allen were ultimately empaneled as jurors.

Trial was scheduled to commence on November 21, 2008. At a pre-trial hearing, Judge Sessions informed the parties that, at the conclusion of the jury selection process, Ms. Webster had expressed to court staff her displeasure about being selected for the jury. Specifically, Ms. Webster was reported to have been "vocally upset," and allegedly told court staff that she was unable to view a photograph of child pornography. (Doc. 113-3 at 38.) Judge Sessions decided to meet with Ms. Webster prior to trial to explore the issue. There was no objection to this proposal.

On the morning of November 21, 2008, Judge Sessions announced that one of the jurors was ill and would not be present for trial. (Doc. 88 at 5.) Having previously empaneled one alternate juror, the Court was now left without an alternate. Judge Sessions also revisited the issue of Ms. Webster's reluctance to serve. During a chambers conference, the government recalled that Ms. Webster had "said she would not enjoy" viewing the photograph in question, but did not "believe she said she could not or would not." Defense counsel concurred with the government's recollection. (*Id.* at 5-6.)

Ms. Webster was then brought into chambers. In the presence of trial counsel, Judge Sessions explained to Ms. Webster his understanding that "after the jury selection you spoke with [a deputy clerk] about an issue about looking at the photographs." (Doc. 88 at 7). Ms. Webster responded that "I guess I really don't feel that I really want to

subject myself to child pornography. I have never seen it, and I have no desire to . . . . Having said that, I mean, if people don't have a problem with my not looking at that one piece of evidence, I don't see why I can't - - ." (*Id.* at 7.)

Judge Sessions informed Ms. Webster that "we are in a bit of a difficult spot because one of the jurors is sick so we are down to 12." *Id.* He added that "my concern is that . . . if you cannot serve, then of course I am not sure where we go from this." (*Id.* at 8.) Judge Sessions also warned Ms. Webster that any photographs would be "part of the evidence and you have to, as a juror, look at everything." *Id.* He urged Ms. Webster that "if you honestly feel you cannot [view the photographs], then you need to tell us that. If you are willing to look at that and make an evaluation - -." *Id.* Ms. Webster responded by stating, "If push comes to shove, I guess I can. I just -- I would prefer not to . . . . I guess I managed to go 54 years without seeing any and I don't know that I really want to start now. But on the other hand, I don't want to jeopardize the proceedings." (*Id*. at 8-9.) Addressing Ms. Webster's worry about a scheduling conflict, the Court forecast that the trial would likely be shorter than anticipated.

After Judge Sessions excused Ms. Webster from chambers, he asked counsel how they wanted to proceed. Defense counsel stated, "I think she can do it. She doesn't want to, but she's -- I think she has expressed a willingness to do it. She understands she doesn't -- it's not her preference . . . ." (*Id.* at 9.) Defense counsel also conceded that viewing child pornography is "difficult for anybody," and opined that "I think it would be better if we proceeded with 12 if possible." (*Id.* at 10.) Judge Sessions called Ms. Webster back into chambers, expressed his appreciation for her willingness to serve, and

stated that while "[i]t is difficult, clearly to look at photographs of this sort . . . I am going to ask you to serve; otherwise, you know, it puts at risk the entire process at this point." (*Id.* at 10-11.)

At trial, the government entered into evidence the instant message chats between Douglas and the undercover officer, as well as the image of child pornography sent by Douglas on May 8, 2007. The government also presented testimony from the undercover officer, Detective Andrew Chaulk of the South Burlington Police Department, and other law enforcement officers involved in the investigation. Douglas's ex-girlfriend, Brenda Forrester, testified that she had discovered electronic files on Douglas's computer, in which Douglas admitted that he had engaged in the molestation of a niece.

Attorney Sherrer argued at trial that law enforcement had engaged in entrapment. He also contended that the government had failed to prove that Douglas took substantial steps to entice a minor: "He didn't send them money, he didn't try to make arrangements . . . . [T]here was a rough idea of a plan, but it was 'Come to Atlanta. Call me when you get here and I'll come get you.' That's the extent of it. That's just planning; that's just contemplating. Those are not substantial steps." (Doc. 87 at 182.) Counsel further argued that Douglas's communications about sexually abusing children were nothing more than fantasy. (Doc. 87 at 18, 27, 65, 176-178, 184.)

Douglas was convicted on both counts. Following trial, Attorney Sherrer was permitted to withdraw and Attorney Frank Twarog was appointed to represent Douglas at sentencing. Prior to sentencing, a presentence report was submitted to the Court which reflected a Sentencing Guideline range of 121-151 months. The conviction on Count One

carried a mandatory minimum sentence of ten years (120 months).   18 U.S.C. § 2422(b).

Attorney Twarog filed a sentencing memorandum arguing that ten years was sufficient to

satisfy the requirements of 18 U.S.C. § 3553.   The government sought a sentence within

the applicable sentencing guideline range.   On November 23, 2009 Judge Sessions

sentenced Douglas to a 121-month term, to be followed by five years of supervised release.

Douglas appealed his conviction, arguing that trial counsel's failure to strike jurors

Webster and Allen constituted ineffective assistance.   In addition, Douglas argued that the

district court abused its discretion in admitting certain evidence, and that the government

had failed to prove beyond a reasonable doubt that he took the "substantial step" necessary

to commit attempted enticement.   Lastly, Douglas asserted that he could not be convicted

of criminal enticement pursuant to 18 U.S.C. § 2422(b) because his communications were

directed at an adult, not at a minor.

In a *per curiam* opinion and a companion amended summary order, the Second

Circuit affirmed the conviction.   *United States v. Douglas*, 626 F.3d 161(2d Cir. 2010);

*United States v. Douglas*, 415 F. App'x 271, 2011 WL 538863 (2d Cir. Feb. 17, 2011).

However, the Court declined to address the ineffective assistance claim, noting such a

claim should be brought in a motion pursuant to 28 U.S.C. § 2255.   *Douglas*, 415 F. App'x

at 273, 2011 WL 538863, at *1.   Douglas filed the instant motion on January 13, 2012.

## Discussion

In his § 2255 motion, Douglas claims that trial counsel: (1) failed to prepare

adequately for trial, conduct an investigation, and interview witnesses; (2) denied him his

right to testify at trial; (3) wrongfully allowed him to be excluded from a chambers

conference, which in turn violated his right to due process; (4) failed to properly question jury panelists and achieve an impartial jury, (5) failed to assert a Speedy Trial Act violation; and (6) failed to object to the indictment.   Douglas also contends his attorneys at sentencing and on appeal were ineffective.

## I.    Legal Standard

To succeed on an ineffective assistance of counsel claim, a defendant must show: (1) that counsel's performance was objectively deficient, and (2) that he was actually prejudiced as a result.   *See Strickland v. Washington*, 466 U.S. 668, 688, 692-93 (1984); *Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011).   An attorney's representation is deficient when it falls "below an objective standard of reasonableness," as determined by reference to "prevailing professional norms."   *Strickland*, 466 U.S. at 688; *see Morales*, 635 F.3d at 43.   However, "constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"   *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).   The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."   *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)).

In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'"   *Id.* (quoting *Strickland*, 466 U.S. at 691).   "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case,

the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *DeLuca*, 77 F.3d at 588 (citing *Strickland*, 466 U.S. at 690). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

Counsel's performance is prejudicial when it is so poor as to "undermine confidence in the outcome" of the proceedings such that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (internal quotation marks omitted); *see Morales*, 635 F.3d at 43. "Unlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

## II.    Preparation for Trial

Douglas first contends that counsel failed to properly prepare for trial, asserting that "[t]he record before this court . . . fail[s] to provide any inference that counsel conducted **any** pretrial investigation in Douglas's case." (Doc. 108-1 at 5) (emphasis in original). This claim is countered, in part, by the affidavit of Attorney Sherrer, who states that "[i]nvestigations were conducted, including, but not limited to, having the child photograph examined by an expert to rule out alterations of the photograph. In addition, numerous witnesses were interviewed." (Doc. 113-6 at 2.) Attorney Sherrer also notes

that he enlisted the assistance of a second "experienced trial counsel . . . to assist in the preparation of trial." (*Id.*)

In his reply memorandum, Douglas criticizes counsel for failing "to interview in-depth his own client" prior to trial. (*Id.*) Accepting this allegation as true, courts have held that lengthy consultation with a client is not required for effective assistance of counsel. *See, e.g., Ochoa v. Breslin*, 798 F. Supp. 2d 495, 503 (S.D.N.Y. 2011); *Cheng Chui Ping v. Willingham*, 746 F. Supp. 2d 496, 500 (S.D.N.Y. 2010) (denying ineffective assistance of counsel claim for failure to "extensively consult with" client prior to trial). Moreover, Douglas's claims do not satisfy the prejudice element of the *Strickland* standard, as he has not made any specific allegations that the purported lack of communication with counsel, or counsel's alleged lack of preparation, weakened his case. *Cheng Chui Ping*, 746 F. Supp. 2d at 500; *see also United States v. Feyrer*, 333 F.3d 110, 120 (2d Cir. 2003) (rejecting "conclusory assertions with respect to [counsel's] shortcomings and the likely effect of these alleged deficiencies on the jury's verdict").

The trial record demonstrates that the defense team was well-prepared for trial, resulting in what Judge Sessions described as an "extraordinarily well-tried case." (Doc. 87 at 226.) Specifically, the trial transcripts reveal that Attorneys Sherrer and McLaughlin were prepared for each witness, offered timely objections and motions, and presented a consistent theory of the case. The Court should therefore find that Douglas has failed to carry his burden of showing that counsel's preparation for trial was objectively deficient. *See Strickland*, 466 U.S. at 691 (holding that counsel's decisions as

to what constitutes a reasonable investigation enjoy "a heavy measure of deference to counsel's judgments").

### III. Denial of Right to Testify

Douglas next claims that he was denied his right to testify at trial. Attorney Sherrer counters in his affidavit that Douglas "was given the opportunity to testify at his trial. This was discussed on a number of occasions prior to the trial and in the presence of co-counsel, Devin McLaughlin." (Doc. 113-6 at 1.) Attorney Sherrer further reports that it was Douglas himself who, perhaps following counsel's "strong recommendation," ultimately "chose not to testify." (*Id.*) Douglas's reply memorandum (Doc. 121) does not address Attorney Sherrer's averments on this point.

A defendant in a criminal case has the constitutional right to testify on his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 49-51 (1987). "Although counsel should always advise the defendant about the benefits and hazards of testifying and of not testifying, and may strongly advise the course that counsel thinks best, counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997). A failure by counsel to communicate as much would thus be unreasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688; *see, e.g., Hayward v. Brown*, 2010 WL 2629037, at *23 (S.D.N.Y. July 1, 2010).

Attorney Sherrer's undisputed affidavit demonstrates that Douglas was provided an opportunity to testify at trial, and chose not to do so. In fact, the question was discussed "on a number of occasions." (Doc. 113-6 at 1.) Accordingly, the record does not support

Douglas's claim of that he was denied the right to testify at trial, and this claim should be DENIED.

## IV. Exclusion from Chambers

Douglas further claims that he was unlawfully excluded from a chambers conference, that defense counsel "refused" to inform him about what had occurred in the conference, and that the exclusion violated his due process rights. (Doc. 108-1 at 6.) The Supreme Court has held that a criminal defendant has a due process right to be present for trial proceedings "to the extent that a fair and just hearing would be thwarted by his absence and to that extent only." *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934). A defendant must be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charges." *Id.* at 105-06. To show that his absence was in violation of the due process clause, the defendant must show not only that his presence would have "contribute[d] to the fairness of the procedure," but also that the procedure itself was "critical to [the] outcome [of the criminal proceeding]." *Kentucky v. Stincer*, 482 U.S. 730, 745, (1987).

Immediately prior to trial, Judge Sessions and counsel met in chambers. Matters discussed during the meeting included Ms. Webster's potential participation on the jury, and evidentiary issues involving an image of child pornography. Ms. Webster was twice called into the meeting to answer questions about her ability to serve. After she departed, defense counsel informed the Court on two separate occasions that he needed to meet with his client prior to the beginning of the trial. (Doc. 88 at 12, 24.) Attorney Sherrer's

affidavit attests that he did, in fact, meet with Douglas to discuss the chambers conference. (Doc. 113-6 at 2.)

Douglas claims that the conference went beyond "strictly legal issues" and included fact issues as well. This claim is belied by the transcript. (Doc. 88 at 5-24.) To the extent that facts were discussed, those discussions were in the context of jury service and distinct evidentiary issues. The Court therefore find that is was not objectively unreasonable for counsel to attend the conference without his client. *Cf. Covington v. Lord*, 275 F. Supp. 2d 352, 360 (E.D.N.Y. 2003).

In addition, Douglas has not come forward with any harm resulting from his absence from the chambers conference. Nor has he informed the Court "how his presence would have contributed to the fairness of the conference." *Jelliff v. Morrissey*, 634 F. Supp. 2d 323, 331 (W.D.N.Y. 2009); *see also United States v. Doe*, 964 F.2d 157, 159 (2d Cir. 1992) (declining to reverse conviction where defendant, after having been excluded from chambers conference, did "not claim that he would have added anything to the discussion or that he was otherwise prejudiced"). Douglas's claim of ineffective assistance with respect to his exclusion from the chambers conference should therefore be DENIED.[1]

---

[1] To the extent that Douglas is bringing a due process claim with respect to his exclusion from the chambers conference, the Court should find that the claim is procedurally barred as Douglas did not raise the claim on direct appeal. Because he has not shown cause for failure to raise it previously and prejudice resulting therefrom, and has not demonstrated actual innocence, the claim should not be reviewed in this collateral proceeding. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

## V.    Failure to Challenge Jurors

Douglas contends that Ms. Webster and Mr. Allen, both of whom informed the Court that they were reluctant to view an image of child pornography, should have been barred from serving as jurors.   (Doc. 108-1 at 5-6, 16-30.)   He also claims that counsel should have sought assurances from each of these individuals "as to whether [they] could be unbiased jurors in light of their strong feelings against viewing alleged child pornography."   (*Id.* at 27.)   Douglas further criticizes defense counsel for "endors[ing] . . . the Court's misleading heavy handedness in persuading Ms. Webster to serve," thus allegedly revealing "counsel's priority of going forward with a trial right away, over protecting Mr. Douglas' right to be tried by an impartial jury."   (*Id.* at 28.)[2]

"Among those basic fair trial rights that can never be treated as harmless is a defendant's right to an impartial adjudicator, be it judge or jury."   *See Gomez v. United States*, 490 U.S. 858, 876 (1989) (quotations and citation omitted).   When a juror expresses concern about his or her ability to serve in an impartial manner, that juror must "unambiguously assure the district court, in the face of these doubts, of [his or] her willingness to exert truly best efforts to decide the case without reference to the predispositions and based solely on the evidence presented at trial."   *United States v. Nelson*, 277 F.3d 164, 203 (2d Cir. 2002).

At the outset of *voir dire*, Judge Sessions asked all potential jury members whether there was anything about their own "personal experiences [or] background . . . the nature of

---

[2]    Douglas argues that, in addition to defense counsel, the Court had an obligation to strike "an avowedly biased juror."   (Doc. 108-1.)   This claim was not raised on direct appeal, Douglas does not argue cause and prejudice, and he has not demonstrated actual innocence.   Accordingly, the Court should find that this claim, too, is procedurally barred.   *See Bousley*, 523 U.S. at 622.

these charges, or anything else" that would prevent them from being fair. (Doc. 106 at 67.) One panel member raised concerns based upon this question, and was not selected to serve. (*Id.* at 68.) Two potential jurors – Allen and Webster – indicated that they would have difficulty viewing an image of child pornography. Significantly, their concerns were limited to their discomfort with viewing the image. Neither panelist stated that he or she would be unable to render a fair and impartial verdict in light of such evidence.

The first such juror, Mr. Allen, ultimately allowed that he could "force himself" to view the image. (*Id.*) Ms. Webster demonstrated a greater aversion to viewing the photograph, and the Court took additional precautions to ensure that her feelings would not interfere with her ability to fairly consider the evidence. Specifically, during the pre-trial chambers conference, Judge Sessions informed Ms. Webster that "if you honestly feel you cannot [view the photographs], then you need to tell us that. If you are willing to look at that and make an evaluation - -." (Doc. 88 at 8.) Ms. Webster concluded that she could view the evidence "if push comes to shove." (*Id.* at 8-9.) Judge Sessions assured Ms. Webster that "[i]t's difficult basically for all of us" to look at such photographs, and thanked her for her willingness to serve. (Doc. 88 at 10-11.)

Douglas claims that counsel's decision not to strike both Allen and Webster as jurors was objectively unreasonable. An attorney's decision whether to challenge a particular juror is generally considered a matter of trial strategy. *See Curkendall v. Mazzuca*, 2008 WL 3851820, at *27 (W.D.N.Y. Aug. 15, 2008); *Rodriguez v. Breslin*, 2009 WL 424738, at *9 (E.D.N.Y. Feb. 20, 2009); *Nova v. Ercole*, 2007 WL 1280635, at *8 (S.D.N.Y. Apr. 30, 2007); *see also Hughes v. United States*, 258 F.3d 453, 457 (6th Cir.

2001) ("An attorney's actions during *voir dire* are considered to be matters of trial strategy."). As such, that decision is awarded considerable deference. *See Strickland*, 466 U.S. at 681 ("Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."); *see also Warrick v. McLaughlin*, 2004 WL 1656579, at *4 (S.D.N.Y. July 22, 2004) ("[a]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance") (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *Doleo v. Reynolds*, 2002 WL 922260, at *4 (S.D.N.Y. May 7, 2002) ("Strategies as to the exercise of peremptories are matters of counsel's intuition, and do not rise to the level of constitutional error.").

Here, counsel exercised several peremptory challenges against other jurors, thus indicating that his choice not to challenge Allen and Webster was a strategic decision. *See, e.g., Rodriguez*, 2009 WL 424738, at *9; *Nova*, 2007 WL 1280635, at *8. Neither Allen nor Webster expressed an unwillingness to view the case objectively, and as Judge Sessions explained, reluctance to viewing child pornography was not outside the norm. Moreover, as Attorney Sherrer asserts in his affidavit, a juror may be retained because the next juror in line "may hold even more extreme views." (Doc. 113-6 at 2.)

Furthermore, in order to assert a successful claim of ineffective assistance for failure to challenge a juror, a defendant "must show that the prospective juror was actually biased against him or her." *Charlemagne v. Goord*, 2008 WL 2971768, at *27 (S.D.N.Y. June 30, 2008) (citations omitted). "Actual bias can be found where the prospective juror

directly admits partiality or where such bias can be inferred from his or her answers to *voir dire* questions." *Id.* (citing *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)).

Again, the jurors in this case stated only that they had an aversion to viewing child pornography. They did not express a more general bias sufficient to counter "the presumption of a prospective juror's impartiality." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). In the absence of any evidence of actual bias by either Mr. Allen or Ms. Webster, and in light of the indisputably-strategic nature of jury selection in this case, Douglas's claim of ineffective assistance of counsel should be DENIED. *See Curkendall*, 2008 WL 3851820, at *27 (finding no Sixth Amendment claim when "the record is devoid of any evidence rebutting the presumption of impartiality of any of these jurors sufficient to warrant habeas relief"); *Diaz v. Conway*, 2008 WL 2461742, at *28 (S.D.N.Y. June 17, 2008) (rejecting ineffective assistance argument in habeas petition based on failure to use peremptory challenges on three prospective jurors with connections to law enforcement "because petitioner offers nothing other than speculation regarding these jurors['] ability to be impartial"); *see also Jones v. Poole*, 2010 WL 1949599, at *33 (W.D.N.Y. May 13, 2010) ("a contention that defense counsel was ineffective for failing to challenge a prospective juror for cause or to exercise a peremptory challenge with respect to that prospective juror does not by itself constitute ineffective assistance.").

## VI. Speedy Trial Act Claim

Douglas contends that he received ineffective assistance of counsel when his attorney failed to seek dismissal of the indictment for purported violations of the Speedy Trial Act. The Speedy Trial Act mandates the "dismissal of charges against a defendant

who is not indicted, arraigned, or brought to trial within periods of time set forth in the statute." 18 U.S.C. §§ 3161-3174.   The trial must begin within seventy days of the indictment.   See 18 U.S.C. § 3161(c)(1).   Notably, however, "the Act contemplates the exclusion of certain periods of delay . . . from the calculation."   *United States v. Oberoi*, 547 F.3d 436, 443 (2d Cir. 2008).

Some Speedy Trial Act exclusions are determined by statute.   *See, e.g.*, 18 U.S.C. § 3161(h)(1).   Others require judicial action.   For example, the Act provides an exclusion if the district court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."   18 U.S.C. § 3161(h)(7)(A); *see also Zedner v. United States*, 547 U.S. 489, 508 (2006); *Parisi v. United States*, 529 F.3d 134, 139-40 (2d Cir. 2008).   The Act grants a trial judge broad discretion to grant "continuance[s] on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).   Douglas contends that counsel should have moved to dismiss on the basis of the Court's alleged failure to sufficiently articulate its findings and reasoning, as required under the Act.   The Court should now find that such a motion would have been meritless.

Douglas was arraigned on November 2, 2007.   At that time, AFPD Fellrath asked for a thirty-day period in which to file pretrial motions.   United States Magistrate Judge Jerome J. Niedermeier granted the request, directing that any pretrial motions be filed on or before December 2, 2007.   The Court also entered a written Order excluding that

thirty-day period in the interest of justice under 18 U.S.C. § 3161(h)(7). That Order

included an express finding by Judge Niedermeier that an exclusion was necessary for

effective preparation of counsel in light of the complexity of the case and the need for

counsel to review discovery. (Doc. 8-4.) These explicit findings satisfied the

requirements of the Act. *See United States v. Breen*, 243 F.3d 591, 596 (2d Cir. 2001).

On November 28, 2007, AFPD Fellrath filed a motion for enlargement of time in

which to file pretrial motions. Fellrath wrote that an immediate trial would not permit

effective preparation by counsel, as the documentary evidence in the case purportedly

required "intensive" review, and that there were numerous witnesses to be interviewed.

(Doc. 22.) Fellrath also represented to the Court that Douglas had agreed that the

enlargement of time should be excluded under the Act. (*Id.*)

Judge Sessions signed a written Order granting the enlargement of time and

excluding a sixty-day period of delay in the interest of justice under § 3161(h)(7), expressly

finding that the exclusion was necessary for adequate preparation of counsel. (Doc. 23).

On January 31, 2008, Fellrath again moved for an enlargement of time in which to file

pretrial motions, and for an exclusion under the Speedy Trial Act. (Doc. 24.) In support

of his request for a fourteen-day enlargement, Fellrath reported that the additional time was

required to obtain and review a transcript that was pertinent to an anticipated pretrial

motion. On February 1, 2008 Judge Sessions issued an Order granting the motion, again

finding that the exclusion was necessary for effective preparation by counsel. (Doc. 25.)

On February 14, 2008, the defense filed two motions. The first sought dismissal of

the indictment on a claimed violation of the defendant's Sixth Amendment right to a

speedy trial.   (Doc. 26.)   The second motion sought recusal of Judge Sessions on an assertion of "actual prejudice and the appearance of partiality."   (Doc. 27.)   The filing of these motions tolled the running of the Speedy Trial Act clock pursuant to 18 U.S.C. § 3161 (h)(1)(D).   On April 25, 2008 the Court issued an Opinion and Order denying both motions (Doc. 30).   The Speedy Trial Act clock commenced, for the first time, on April 26, 2008.

Thirty-one days elapsed under the Act when, on May 27, 2008, the Court held a status conference at which AFPD Fellrath stated that he had accepted a position as an Assistant U.S. Attorney in Arizona.   The Court granted Douglas's request that new counsel be appointed, relieving the Office of the Federal Defender from the case.   (Doc. 117-5.)   The Court excluded the delay from May 28, 2008 to the September jury draw, again under the "interest of justice" exclusion set forth § 3161(h)(7), finding that the exclusion of time was required in the interest of justice "so that another attorney can be assigned to represent [Douglas] and become aware of his defense."   (*Id*.)   The appointment of new counsel is specifically noted in the Speedy Trial Act as a potential reason to exclude time in the interests of justice.   *See* 18 U.S.C. § 3161(h)(7)(B)(iv).

As discussed above, Attorney Sherrer was appointed to represent Douglas.   On August 21, 2008, a written plea agreement was filed and a change of plea hearing was scheduled for September 2, 2008.   (Doc. 40.)   The Speedy Trial Act automatically excludes "any period of delay arising from the consideration of a proposed plea agreement to be entered into by a defendant."   18 U.S.C. § 3161(h)(1)(G).   At the change of plea hearing, Douglas changed his mind and decided to proceed to trial.

On September 22, 2008, the defense moved to dismiss the indictment. (Doc. 43.) The motion again tolled the running of the Speedy Trial Act clock pursuant to 18 U.S.C. § 3161 (h)(1)(D). The Court denied the motion on November 17, 2008. *Voir dire* and jury selection occurred on November 5, 2008, and the trial commenced on November 21, 2008. The Second Circuit has held that "[t]rial normally 'commences' for purposes of the [Speedy Trial] Act with the *voir dire* of the jury." *United States v. Fox*, 788 F.2d 905, 908 (2d Cir. 1986); *see also United States v. White*, 980 F.2d 836, 841 (2d Cir. 1992) (noting that under the Speedy Trial Act, courts have consistently regarded jury selection as the commencement of trial).

In sum, this case experienced a series of excusable delays. As a result, beginning on the date of Douglas's initial appearance, fewer than seventy days of un-excused time passed prior to the commencement of trial. There was no Speedy Trial Act violation, and counsel did not err in failing to move to dismiss on this basis. This claim should therefore be DENIED.

## VII. Failure to Object to Indictment

With respect to trial counsel, Douglas's final ineffective assistance claim is that counsel failed to object to technical flaws in the indictment. Count One of the indictment alleged a violation of 18 U.S.C. § 2422(b), which makes it a crime to persuade, induce, entice, or coerce "any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense . . . ." 18 U.S.C. § 2422(b). Because the superseding indictment referred to "an offense" rather than "a criminal offense," Douglas contends that counsel should have

moved for dismissal of Count One.   (Doc. 46 at 1.)   Douglas also claims that Count Two

failed to state that an image of child pornography "must contain a minor engaging in a

sexually explicit act."   (Doc. 108-1 at 16.)   He contends that both alleged flaws deprived

the Court of jurisdiction.   (*Id.*); (Doc. 121 at 4.)

Douglas's claims are without merit.   First, it is well settled that "defects in an

indictment do not deprive a court of its power to adjudicate a case."   *United States v.*

*Cotton*, 535 U.S. 625, 630 (2002).   Furthermore, technical errors in indictments may be

cured by the weight of evidence presented at trial, the jury instructions, and the verdict.

*McGrath v. United States*, 275 F. 294, 300 (2d Cir. 1926) (the technical defects of the

indictment were deemed to have been cured by a proper jury charge and the verdict.   An

error is harmless if the district court took appropriate corrective action, such as giving a

curative jury instruction.   *See United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004);

*United States v. Oshatz*, 912 F.2d 534, 541 (2d Cir. 1990).

Here, Judge Sessions instructed the jury that § 2422(b) required enticement "to

engage in sexual activity of a criminal nature."   (Doc. 87 at 202.)   In fact, his charge

made several references to sexual activity for which a person could be charged with a

criminal offense, and specifically for which Douglas could have been prosecuted in the

State of Alabama.   (*Id.* at 202, 205-06)   Accordingly, the wording of Count One did not

result in prejudice, and counsel would have had no basis for filing a motion to dismiss.

As to Count Two, the superseding indictment cited 18 U.S.C. § 2256(8), which

defines child pornography.   Also, Judge Sessions properly recited the elements of an

offense under 18 U.S.C. § 2252A(a)(1), including the requirement that the visual depiction

be "of an actual minor engaged in sexually explicit conduct," as well as a detailed definition of child pornography. (*Id.* at 208, 209-11.) Accordingly, not only did the Court have jurisdiction over Count Two, but the jury was clearly instructed as to the elements of the crimes alleged, and returned a verdict consistent with those instructions. A motion to dismiss challenging Count Two would have been without merit, and counsel was not ineffective for failing to bring such a motion. Douglas's argument on this point should therefore be DENIED.

## VIII. Sentencing and Appellate Counsel

Douglas's claims of ineffective sentencing and appellate counsel are largely conclusory. His claim against sentencing counsel is that Attorney Twarog "had no idea what he was doing" and "had virtually no idea about the Sentencing Guidelines." (Doc. 108-1 at 11.) Douglas does not, however, cite any prejudice resulting from sentencing counsel's alleged lack of expertise. *See Strickland*, 466 U.S. at 689. In fact, Douglas received a sentence at the low end of the guideline range, and only one month more than the statutory minimum. *See, e.g., Leon v. United States*, 2005 WL 418604, at *3 (E.D.N.Y. Feb. 11, 2005) (denying ineffective assistance claim for lack of prejudice where counsel obtained a sentence at the low end of the guideline range).

As to appellate counsel, Douglas argues that his appeal should have challenged the allegedly-defective indictment, and raised a Speedy Trial Act defense. For reasons discussed above, there was no legitimate legal basis for raising either claim. Furthermore, even if such claims were not frivolous, "'counsel does not have a duty to advance every nonfrivolous argument that could be made.'" *Ramchair v. Conway*, 601 F.3d 66, 73 (2d

Cir. 2010) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).   Finally, a review of Douglas's fifty-seven page appellate brief (Doc. 113-9) demonstrates that appellate counsel had a thorough grasp of the issues involved in the case, and set forth those issues in a coherent and scholarly manner.   Douglas's claims of ineffective assistance by both sentencing and appellate counsel should therefore be DENIED.

## Conclusion

For the reasons set forth above, I recommend that Douglas's motion vacate, set aside, or correct his sentence (Doc. 108), filed pursuant to 28 U.S.C. § 2255, be DENIED.

Dated at Burlington, in the District of Vermont, this 7th day of August, 2012.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c).   Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.   *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).